[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} Defendant-appellant Joseph Banks appeals his conviction for two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1).
 {¶ 3} In his sole assignment of error, Banks maintains that his convictions were against the manifest weight of the evidence. We disagree and affirm.
 {¶ 4} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if on weighing the evidence in their minds, they shall find thegreater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."[1]
 {¶ 5} To determine whether a trial court's judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[2] Because the trier of fact is in a better position to observe the witnesses' demeanor and to assess their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[3]
The trier of fact is free to believe all, part, or none of any witness's testimony.[4]
 {¶ 6} During the trial in this case, the state presented evidence that K.W., a fourteen-year-old girl, lived with her mother, two sisters, and Banks, who was her mother's boyfriend at the time. At the time of the offenses, Banks was unemployed and was thus often alone with K.W. and her sisters while their mother worked. K.W. described two incidents that occurred with Banks when her mother was at work and Banks was in the house with her. K.W. testified that the first incident occurred in January 2002 when Banks took her into his bedroom and tried to get her to look at a pornographic movie on his television. Banks told K.W. he wanted to show her what people did on television and asked her to lie down on the bed. K.W. testified that Banks then tried to put his hand inside her pants.
 {¶ 7} K.W. testified that the second incident occurred on April 18, 2002. K.W. stated that Banks came into her room wearing only a towel and asked her for a hug. Banks told her that he wanted to show her what it would be like in high school. Banks then put his hand inside her pants, grabbed her buttocks, and rubbed them. K.W. stated that when she tried to push Banks away, he threatened to whip her with the cord of a fan. Banks also told her that he could make things a lot worse and uttered a sexually threatening comment. K.W. testified that she then stopped struggling. Banks then put his hand inside the front of her pants and rubbed her pubic area. K.W. testified that after Banks left her room, she wrote a letter to her teacher in which she described this incident and asked the teacher to help her. K.W. testified that she gave her teacher the letter the next day.
 {¶ 8} K.W.'s teacher testified that K.W. was the best student in her class. The teacher stated that the day after the April incident, she noticed that K.W. was very quiet. The teacher testified that K.W. gave her a handwritten note that described the April incident with Banks. The teacher testified that she immediately turned the note over to the school psychologist, who then called a children's services agency. K.W.'s teacher testified that K.W. and her sister stayed with her until they were able to return home.
 {¶ 9} K.W. was subsequently examined by a doctor at Children's Hospital in Cincinnati. The doctor testified that she found an abrasion on K.W.'s vagina. The doctor further testified that this abrasion could only have been caused by sexual abuse. The state also presented testimony from K.W.'s mother. K.W.'s mother testified, among other things, that Banks had called her at work numerous times prior to trial and had left messages telling her not to appear in court.
 {¶ 10} Banks testified in his defense. Banks stated that he had lived with K.W. and her family for five or six years and that he had been engaged to K.W.'s mother. Banks testified that he had never touched K.W. or any of her sisters in a sexual manner. He denied bringing K.W. to his bedroom in January. He also denied the April incident. Banks testified that K.W. had been angry with him on the day of the April incident because he had punished her the night before. Banks testified that K.W. made up the two episodes to get back at him. He further alleged that the abrasion on K.W.'s vagina could have been caused by anyone, including a boy at school or K.W.'s teacher.
 {¶ 11} Here, the trial court was faced with two different versions of the events. The trial court acknowledged as much on the record, when it stated that the key issue in the case was whose testimony was more credible. The court then stated that it believed that K.W. was telling the truth. Because the trial court, as the trier of fact, was in the best position to judge the credibility of the witnesses and because it was free to reject Banks's testimony, we cannot say the trial court's judgment was against the manifest weight of the evidence. We, therefore, overrule Banks's sole assignment of error and affirm the judgment of the trial court.
 {¶ 12} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Hildebrandt and Gorman, JJ.
[1] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing Blacks Law Dictionary (6 Ed. 1990) 1594.
[2] Id. citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[3] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[4] State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.